IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JONIE KEY,                          :
                                    :
      Plaintiff,                    :
                                    :
vs.                                 :
                                    :    CIVIL ACTION 12-0614-KD-M
JAMES MOTT, *et al.*,               :
                                    :
      Defendants.                   :

REPORT AND RECOMMENDATION

The Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Town of Mount Vernon (Docs. 29-30) and the Motion to Dismiss Plaintiff's First Amended Complaint filed by the Individual Defendants (Docs. 31-32) have been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Jurisdiction has been invoked in this Court under 28 U.S.C. §§ 1331 and 1367, pursuant to 42 U.S.C. § 1983.  After consideration, it is recommended that Defendant Mount Vernon's Motion to Dismiss (Docs. 29-30) be granted in its entirety.  It is further recommended that the Motion to Dismiss filed by the Individual Defendants (Doc. 31-32) be granted in its entirety.

The facts are, briefly, as follows.  On September 29, 2010

1

Plaintiff Jonie Key was in custody in the Jail of Defendant Town
of Mount Vernon (hereinafter *Mount Vernon* or *Town*) (Doc. 26, ¶¶
1, 46).  Defendant James Mott, a Mount Vernon police officer,
was on duty at the jail that day when Plaintiff asked to use the
jail phone (*id.* at ¶¶ 2, 4, 47-48).  Mott took Key to the small
room where the inmate phone was located and had sexual
intercourse with her; he then took Plaintiff back to her cell
and left the jail (*id.* at ¶¶ 50, 52-53, 56).  On July 9, 2012,
Mott pled guilty to custodial sexual misconduct, a Class C
felony under Ala. Code § 14-11-31 (*id.* at ¶ 59).

On September 25, 2012, Plaintiff brought this action,
asserting eight claims against Mott, Mount Vernon, and multiple
other Defendants[1] (Doc. 1).  On December 12, Key filed her First

---

[1]Besides Mott and Mount Vernon, the other Defendants are as
follows:  Mount Vernon Mayor Jerry C. Lundy (Doc. 26, ¶¶ 6, 8); Mount
Vernon Chief of Police Steve A. Reed (*id.* at ¶¶ 9, 11); Mount Vernon
Acting Chief of Police Joe Cassidy (*id.* at ¶¶ 12, 14); Mount Vernon
Director of Public Safety Jerry K. Taylor (*id.* at 15, 17); and Mount
Vernon Council Members Johnnie Robinson, Cecil Earl Driskell, Robert
Taylor, Jr., Jeffery Bolden, Jr. and Verdell Trotter-Dees (*id.* at ¶¶
18, 20).
    Plaintiff has sued the Defendants in their official and
individual capacities.  Plaintiff's claims against Defendants Lundy,
Reed, Cassidy, Jerry K. Taylor, Robinson, Driskell, Robert Taylor,
Jr., Bolden, and Trotter-Dees in their official capacities are treated
as claims against the Town of Mount Vernon.  *See Hardy v. Town of
Hayneville*, 50 F. Supp. 2d 1176, 1184-85 (M.D. Ala. 1999) ("Official-
capacity suits . . . 'generally represent only another way of pleading
an action against an entity of which an officer is an agent.'  As long
(Continued)

2

Amended Complaint, asserting the following claims against all Defendants:  (1) assault (Doc. 26, ¶¶ 65-67); (2) violation of the custodial sexual misconduct statute (*id.* at ¶¶ 68-70); (3) violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution (*id.* at ¶¶ 71-73); (4) violation of constitutional rights due to custom, policy, or practice in the hiring of Mott (*id.* at ¶¶ 74-77); (5) violation of constitutional rights due to custom, policy, or practice in the training and/or supervision of Mott (*id.* at ¶¶ 78-81); (6) violation of constitutional rights due to sexual harassment and/or improper sexual conduct (*id.* at ¶¶ 82-85); (7) violation of constitutional rights due to custom, policy or practice in having no gender restrictions in the supervision of inmates (*id.* at ¶¶ 86-89); and (8) violation of constitutional rights due to

---

as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity") (*quoting Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  "There is no longer a need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Id.* (*quoting Graham*, 473 U.S. at 167 n.14).  Thus, it is recommended that Plaintiff's § 1983 claims against Defendants Lundy, Reed, Cassidy, Jerry K. Taylor, Robinson, Driskell, Robert Taylor, Jr., Bolden, and Trotter-Dees in their official capacities be dismissed on this basis.

custom, policy, or practice in the policy of violating citizens'/inmates' constitutional rights (*id.* at ¶¶ 90-93).  Key seeks compensatory and punitive damages for her injuries as well as attorneys' fees and costs (Doc. 26).

On December 27, Mount Vernon filed a Motion to Dismiss the First Amended Complaint (Docs. 29-30); on that same date, a Motion to Dismiss the First Amended Complaint was collectively filed by all of the individual Defendants except for Mott (Docs. 31-32).[2]  Key has responded to these motions (Doc. 34)[3] to which the Defendants have replied (Docs. 37-38).

The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"

---

[2]The Court shall refer to the individual Defendants, excluding Mott, collectively as the *Individual Defendants* or *Town Leaders*).

[3]In a footnote in her Response, Plaintiff stated that she "adopts and incorporates her argument as set forth in her Response in Opposition to Defendants' Motions to Dismiss the initial Complaint as if set forth herein.  [Doc. 23]" (Doc. 34, p. 1 n.1).  The Court will not consider the arguments made in that document as the Amended Complaint superseded the original Complaint, rendering the original of no import in this action.  *See Jefferson v. H.K. Porter Co.*, 485 F.Supp. 356, 359-60 (N.D. Ala. 1980), *aff'd*, 648 F.2d 337 (5th Cir. 1981); *see also Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982).  Likewise, the Court finds that Key's Response to the Motion to Dismiss has been superseded.

*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[4]  While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (citations omitted).  "Facts that are

---

[4]*Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.  The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007).  The Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for evaluating Plaintiff's claims.

'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombley*, 550 U.S. at 556). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)),

*cert. denied*, 502 U.S. 810 (1991).

The Court will first address the viability of the constitutional claims raised pursuant to section 1983 before examining the State claims.  Section 1983 states that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.  There are two essential elements that must be explored in examining a § 1983 claim:  "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

In the third count of the Amended Complaint, Key has claimed violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution in that her "right to bodily integrity" had been violated by all of the Defendants (Doc. 26 at ¶ 72; *see generally* ¶¶ 71-73).  The

7

Court further notes that claims four through eight all generally assert violations under section 1983, though no specific reference was made to particular constitutional passages.

The Court first notes that all claims are brought against all Defendants, all acting under the color of state law, so the first prong of Parratt has been satisfied.  The Court will analyze the Amendments separately to determine if Plaintiff has demonstrated any violations of Constitutional dimension.

The First Amendment states as follows:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Court finds no asserted facts in Key's Amended Complaint that provide an indication that a violation of the First Amendment has occurred.  Specifically, the Court finds no reference to Plaintiff's being deprived of the opportunity to practice her religion, speak, or assemble; furthermore, there has been no showing that Key was denied any right to seek redress of her grievances.  Defendants correctly note that Plaintiff has not discussed this claim in her response to the Motion to Dismiss (Doc. 37, p. 3; Doc. 38, p. 2; *cf.* Doc.

8

34).  It is recommended that the two Motions to Dismiss (Docs. 29-32) be granted as to any claim raised herein with regard to a violation of the First Amendment.

The Fourth Amendment states as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Court finds no asserted facts in Key's Amended Complaint that provide an indication that a violation of the Fourth Amendment has occurred.  Specifically, the Court finds nothing in Plaintiff's Amended Complaint indicating that her claims rely on an improper arrest, search, or seizure.  Defendants correctly note that Plaintiff has not discussed this claim in her response to the Motions to Dismiss (Doc. 37, p. 3; Doc. 38, p. 2; *cf.* Doc. 34).  It is recommended that the two Motions to Dismiss (Docs. 29-32) be granted as to any claim raised herein with regard to a violation of the Fourth Amendment.

The Fifth Amendment states as follows:

9

> No person shall be held to answer for a
> capital, or otherwise infamous crime, unless
> on a presentment or indictment of a Grand
> Jury, except in cases arising in the land or
> naval forces, or in the Militia, when in
> actual service in time of War or public
> danger; nor shall any person be subject for
> the same offense to be twice put in jeopardy
> of life or limb, nor shall be compelled in
> any criminal case to be a witness against
> himself, nor be deprived of life, liberty,
> or property, without due process of law; nor
> shall private property be taken for public
> use without just compensation.

U.S. Const. amend. V.  This Court notes that "[t]he Fifth

Amendment obviously does not apply here—the acts complained of

were committed by state rather than federal officials." *Riley

v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997), *cert. denied*,

524 U.S. 915 (1998).  Furthermore, the Court notes that

Defendants have correctly pointed out that Key has not discussed

this claim in her response to the Motions to Dismiss (Doc. 37,

p. 3; Doc. 38, p. 2; *cf.* Doc. 34).  It is recommended that the

two Motions to Dismiss (Docs. 29-32) be granted as to any claim

raised herein with regard to a violation of the Fifth Amendment.

The Fourteenth Amendment states as follows:

> All persons born or naturalized in the
> United States and subject to the
> jurisdiction thereof, are citizens of the
> United States and of the State wherein they
> reside.  No State shall make or enforce any

10

> law which shall abridge the privileges or
> immunities of citizens of the United States;
> nor shall any State deprive any person of
> life, liberty, or property, without due
> process of law; nor deny to any person
> within its jurisdiction the equal protection
> of the laws.

U.S. Const. amend. XIV, § 1.

Mount Vernon, in its brief, pointed out that Key had not specified whether she was a pretrial detainee or a convicted prisoner (Doc. 30, p. 7 n.4), noting that the former calls upon the Eighth Amendment while the latter relies on the Fourteenth Amendment.  The Court notes that the Eleventh Circuit Court of Appeals has stated that

> [c]laims involving the mistreatment of
> arrestees or pretrial detainees in custody
> are governed by the Fourteenth Amendment's
> Due Process Clause instead of the Eighth
> Amendment's Cruel and Unusual Punishment
> Clause, which applies to such claims by
> convicted prisoners.  However, the
> applicable standard is the same, so
> decisional law involving prison inmates
> applies equally to cases involving arrestees
> or pretrial detainees.

*Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted).  In her response to the Motions to Dismiss, Plaintiff has still not clarified what her status was at the time of her incarceration, but she has referenced Eighth

11

Amendment cases in answering the Defendants (Doc. 34, pp. 8-9). On this ground, and this ground alone, the Court will examine Key's claims under the Eighth Amendment and consider her claims under the Fourteenth Amendment to be abandoned.  It is recommended that the two Motions to Dismiss (Docs. 29-32) be granted as to any claim raised herein with regard to a violation of the Fourteenth Amendment.

The Eighth Amendment states the following:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. The Court notes that "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (U.S. 1994). The *Farmer* Court went on to note that a prison official violates the Eighth Amendment when two different requirements are met. First, in a failure to prevent harm claim, "the inmate must show that [she] is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Second, there must be a showing of the prison official's "'deliberate indifference'" to her safety.  *Id.* (citations omitted).  Noting that deliberate indifference had often been equated with recklessness, the Supreme Court held that a subjective inquiry

into the official's awareness was necessary to find an Eighth
Amendment violation.  *Id.* at 836-40.  "The question under the
Eight Amendment is whether prison officials, acting with
deliberate indifference, exposed a prisoner to a sufficiently
substantial 'risk of serious damage to his future health.'"  *Id.*
at 843 (citations omitted).  Finally, the *Farmer* Court noted
that "prison officials who actually knew of a substantial risk
to inmate health or safety may be found free from liability if
they responded reasonably to the risk, even if the harm
ultimately was not averted."  *Id.* at 844.

     The Court will examine whether Plaintiff has demonstrated
that she was "incarcerated under conditions posing a substantial
risk of serious harm."  *Farmer*, 511 U.S. at 834.  The Court
first notes that Key's Amended Complaint does not assert that
there had been any instances of forced sexual intercourse
between a jail employee and an inmate prior to her rape; in
fact, there are no assertions of sex of any kind—forced or
consensual—between employees and inmates in the Amended
Complaint.  Plaintiff does allege that Mount Vernon hired
officers who had "histories of allegations of illegal conduct,
sexually inappropriate conduct (sexual harassment), [and]
disciplinary problems" (Doc. 26, ¶ 23); the Court notes, though,

13

that this is a broad accusation with no attendant factual
details.  The Court finds that these allegations do not amount
to a showing that Key was "incarcerated under conditions posing
a substantial risk of serious harm" as required by *Farmer*.

Plaintiff has made more pointed accusations against
Defendant Mott.  Specifically, Key claimed that "Mott had left
at least one previous position due to an allegation of sexual
harassment"[5] (*id.* at ¶ 29); Plaintiff further asserts that "Mott
was terminated for cause, or asked to resign from every one of
the four previous law enforcement provisions [sic] he had held
for [] improper interaction with inmates, failure to comply with
prisoner handling guidelines in addition to other reasons,
improper comments to fellow employees, and altering records"
(*id.* at ¶ 28).  Key has also claimed that, since he was hired by
the Town, "Mott was believed by Defendants to be regularly
engaging in intercourse with individuals, and drinking alcohol
in his patrol car while on duty" (*id.* at ¶ 33).

Though Plaintiff makes these assertions in an effort to

_____

[5]The Court notes, though, that the contours of "sexual
harassment" are large, spanning employment law as well as criminal law
violations, and that Key has not provided any factual details of that
assertion.

show that the Individual Defendants are responsible for Mott's raping her, the Court finds that Plaintiff has not demonstrated the connection.  Nevertheless, the Court will further consider this claim under Eleventh Circuit law, stating as follows:

> In order to prevail on the merits in a § 1983 action against a defendant in his individual capacity, the plaintiff generally must show that he was personally involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).  "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).
> A supervisor may be individually liable under § 1983 only when: (1) "the supervisor personally participates in the alleged unconstitutional conduct"; or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*  A causal connection is established when: (1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he failed to do so; (2) the supervisor's policy or custom resulted in deliberate indifference; (3) the supervisor directed the subordinate to act unlawfully; or (4) the supervisor knew the subordinate would act unlawfully and failed to stop the unlawful action.  *Id.*  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

*Lloyd v. Van Tassell*, 318 Fed.Appx. 755, 760 (11th Cir. 2009).

15

The Court notes that Plaintiff has made no specific assertions against any of the Individual Defendants in the Amended Complaint on any claim that demonstrates a constitutional violation (*see* Doc. 26).  Rather, Key has only made assertions about the Defendants as a collective unit, failing to show how any particular Defendant "was personally involved in acts or omissions that resulted in [a] constitutional deprivation" as required in *Hale* and *Lloyd*.

The Court further finds that Plaintiff has failed to assert facts against any of the Individual Defendants that satisfy the requirements of establishing supervisory liability.  More specifically, there has been no showing that any of the Individual Defendants participated personally in any unconstitutional conduct.  Likewise, the Court finds that Key has not demonstrated any causal connection between any of the Individual Defendants and a constitutional violation.  In spite of Plaintiff's assertions of numerous constitutional violations by all of the Defendants, they are only conclusory as Key has not asserted facts that demonstrate that any of the Individual Defendants have done—or failed to do—anything that led to her being forced to have nonconsensual sex with Defendant Mott.  For this reason, it is recommended that the Motion to Dismiss (Docs. 31-32) by the

Individual Defendants be granted as to claims three, four, five, six,[6] seven, and eight as raised against these Defendants in their individual capacities in violation of the Eighth Amendment.

The Court will now consider the Eighth Amendment claim made against the Town of Mount Vernon. The Court notes that Key has failed to demonstrate a violation of the Eighth Amendment against the Town. Specifically, Plaintiff has not shown that Mount Vernon demonstrated "'deliberate indifference' to a substantial risk of serious harm" as required by *Farmer*. Though Mott sexually assaulted her, Plaintiff has failed to demonstrate that the Town was responsible. Therefore, it is recommended that Mount Vernon's Motion to Dismiss (Docs. 29-30) be granted as to Key's third claim.

In five of her claims (counts four through eight), Plaintiff has asserted a violation of her constitutional rights due to custom, policy, or practice of Mount Vernon. To properly analyze these claims, the Court needs to view the assertions in

---

[6]A recommendation is not made at this time as to Defendant Lundy in his individual capacity with regard to count six in Plaintiff's Amended Complaint. A discussion of that claim, as it pertains to Mayor Lundy, will occur later in this Report in connection with the Court's analysis of Mount Vernon's liability on the same claim.

the following light:

> "A municipality may be held liable under §
> 1983 if the plaintiff shows that a 'custom'
> or 'policy' of the municipality was the
> 'moving force' behind the constitutional
> deprivation." *Sewell v. Town of Lake
> Hamilton,* 117 F.3d 488, 489 (11th Cir.1997)
> (citing *Monell v. Dep't of Social Services
> of New York,* 436 U.S. 658, 690-94, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978)). "A policy is
> a decision that is officially adopted by the
> municipality, or created by an official of
> such rank that he or she could be said to be
> acting on behalf of the municipality." *Id.*
> (citing *Brown v. City of Fort Lauderdale,*
> 923 F.2d 1474, 1479-80 (11th Cir.1991)). "A
> custom is a practice that is so settled and
> permanent that it takes on the force of
> law." *Id.* (citing *Monell,* 436 U.S. at 690-
> 91, 98 S.Ct. 2018).

*Woodward v. Town of Oakman*, 885 F.Supp.2d 1216, 1228 (N.D. Ala. 2012).

In her fourth claim, Plaintiff asserts a violation of constitutional rights due to custom, policy, or practice in the hiring of Mott (Doc. 26, ¶¶ 74-77). The specific factual allegations are as follows:

> 22) The Defendants, jointly and
> severally, together and individually,
> implemented and participated in policies,
> customs, and practices pertaining to the
> hiring of incompetent officers and/or
> officers having a substantial risk of harm
> to and high likelihood of violating those

18

they encounter, including but no limited to,
those in their custody.
        23) Specifically, Mount Vernon engaged
in a policy, custom, or practice of hiring
officers with defiant records evidencing a
history of problems/issues including but not
limited to histories of allegations of
illegal conduct, sexually inappropriate
conduct (sexual harassment), disciplinary
problems, among other matters.

        ***

        27) James Mott was hired pursuant to a
policy, custom or practice wherein the Town
of Mount Vernon performed no investigation
into the background of police officers
before hiring them on as full time police
officers; alternatively, Mott was hired
pursuant to a policy or custom or practice
as stated *supra* wherein individuals,
including but not limited to Mott, who were
known to be incompetent to perform the
position and duties of a police officer, and
likely to violate the constitutional rights
of those they encountered in the course of
their duties were hired on in spite of the
known incompetency.

        ***

        76) Said custom, policy, or practice
was the moving force behind the assault of
Key.

(Doc. 26).

    The United States Supreme Court has held, in these types of

claims, that a "plaintiff must demonstrate that a municipal

decision reflects deliberate indifference to the risk that a

violation of a particular constitutional or statutory right will follow the decision." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 411 (1997).  The Court further stated that municipal liability would attach only where checking the applicant's background "would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411.  To have deliberate indifference, there must be "a strong connection between the troublesome aspects of the applicant's background and the third party's injury." *Flowers v. Patrick*, 869 F.Supp.2d 1331, 1335 (M.D. Ala. 2012) (*citing Gros v. City of Grand Prairie*, 209 F.3d 431 (5th Cir. 2000)).

In this action, Key has failed to satisfy the requirements of *Brown* and *Flowers*.  Specifically, in paragraphs twenty-two and twenty-three, Plaintiff lists objectionable behavior committed by other officers hired by the Town, but fails to name those officers or provide specific factual support for the assertions; furthermore, although there is a reference to "histories of allegations" of "sexually inappropriate conduct (sexual harassment)," this language fails to demonstrate a custom or practice of hiring officers who coerce sex from the

20

inmates.  More germane to the issue at hand, though, the Court
cannot say that the specific allegations about Mott in paragraph
twenty-seven "would lead a reasonable policymaker to conclude
that the plainly obvious consequence of the decision to hire
[Mott] would be the deprivation of [Key's] federally protected
right." *Brown*, 520 U.S. at 411.  On this basis, the Court
cannot say that Mount Vernon's decision to hire Mott
demonstrated deliberate indifference to a risk of a violation of
Plaintiff's constitutional right to be free from assault.
Therefore, it is recommended that Defendant Mount Vernon's
Motion to Dismiss (Docs. 29-30) be granted as to count four of
the Amended Complaint.

In her fifth claim, Plaintiff has asserted a violation of
constitutional rights against Mount Vernon due to custom,
policy, or practice in the training and/or supervision of Mott
(Doc. 26, ¶¶ 78-81).  More specifically, Key has made the
following factual assertions:

> 31) Once hired on at the Town of Mount
> Vernon as a police officer, Mott received no
> training, despite his known incompetency.
> 32) Once hired on at the Town of Mount
> Vernon as a police officer, Mott was not
> supervised by his superiors despite his
> known incompetency in general and with
> prisoners specifically.
> 33) For instance, in addition to the

21

history referred *supra*, Mott was believed by
Defendants to be regularly engaging in
intercourse with individuals, and drinking
alcohol in his patrol car while on duty.

34) Despite these suspicions,
Defendants did not correct or confront Mott.

35) No one attempted to correct or
retrain or have Mott supervised despite this
knowledge.

36) The failure to train or supervise
Defendant Mott was pursuant to a custom,
policy, or practice of the Town of Mount
Vernon not to train or supervise police
officers, including those who are known to
be incompetent, and likely to commit
violations of the constitutional rights of
those they encounter including, but not
limited to those individuals in custody.

(Doc. 26).

As discussed earlier, Plaintiff must demonstrate that Mount
Vernon had a custom or policy that was the "'moving force'
behind the constitutional deprivation" that she suffered.
*Woodward*, 885 F.Supp.2d at 1228.  The Court further notes
specific insight by the Eleventh Circuit Court of Appeals in
addressing a failure to train or supervise claim:

> [M]unicipal liability also may be based on a
> claim of inadequate training "where a
> municipality's failure to train its
> employees in a relevant respect evidences a
> 'deliberate indifference' to the rights of
> its inhabitants [such that the failure to
> train] can be properly thought of as a city
> 'policy or custom' that is actionable under
> § 1983."

22

*Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489-90 (11th Cir. 1997) (*quoting City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).  The Court notes that the *Sewell* Court, in this passage just quoted, addressed a failure to train and supervise claim, in a factually similar situation, and relied on a Second Circuit decision to reach its decision:

> "It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens. . . . *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision.  Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise."

*Sewell*, 117 F.3d at 491 (*quoting Walker v. City of New York*, 974 F.2d 293, 299-300 (2nd Cir. 1992), *cert. denied*, 507 U.S. 972 (1993) (*applying City of Canton*, 489 U.S. at 390 n. 10)).

In this action, Plaintiff has failed to assert specific facts demonstrating a custom or policy that exhibits deliberate indifference to any constitutional right.  The Court finds that Key's bare assertion, that Mount Vernon's failure to properly

23

train and supervise Mott led to her assault, is insufficient to make the Town liable under *Sewell* and *Walker*.  While Plaintiff has asserted conduct by Mott that is unbecoming of a police officer, she has not pointed to any particular deficiency in his training or supervision; merely claiming that he received no training, without more, is not enough to survive Defendant's Motion to Dismiss.  Therefore, it is recommended that Defendant Mount Vernon's Motion to Dismiss count five of Plaintiff's Amended Complaint be granted.

In her sixth claim, Key asserts a violation of her constitutional rights by Mount Vernon due to sexual harassment and/or improper sexual conduct (Doc. 26, ¶¶ 82-85).  More specifically, Plaintiff has made the following factual assertions:

> 37) At the time Mott began serving as a police officer, overt sexual harassment was not only tolerated in the Town of Mount Vernon, it was also engaged in by among other individuals, the Defendant Major Jerry Lundy, in addition to other employees.
> 38) Specifically, Lundy and another employee dispatcher engaged in sexual harassment of one female dispatcher.
> 39) That episode of harassment has resulted in an EEOC finding and currently pending lawsuit in the Southern District of Alabama.
> 40) In that matter, open displays of affection by the male dispatcher were posted

24

on the city bulletin board.

     41) Further in another incident, Mount Vernon Police officer (not Mott) attempted to rape a city employee approximately a year before the assault of Key.

     42) The police officer was not disciplined whatsoever.

     43) Reports of sexual harassment were routinely ignored and were not followed up on in terms of corrective action.

     44) Instances of sexual harassment were known to openly occur by the employees of Mount Vernon, including the dispatchers and police officers without reprisal or correction.

     45) The de facto practice or custom of sexual harassment or inappropriate sexual behavior created a permissive and encouraging atmosphere for such conduct to occur, including but not limited to the rape of Jonie Key, which was pursuant to said policy and other policies referred to *supra* and *infra*.

(Doc. 26).

    As noted earlier, in note six, the Court needs to revisit the claim that Individual Defendant Mayor Lundy violated Plaintiff's constitutional rights due to sexual harassment and/ or improper sexual conduct.  In ¶¶ 37-39, Key asserts that Lundy engaged in sexual harassment of an employee that led to an EEOC finding and a lawsuit in this Court.  The Court finds that such allegations bear no relationship to the sexual assault of Key and do not establish a custom or policy such that Lundy has sanctioned or endorsed Mott's behavior.  It is recommended that

the Motion to Dismiss (Docs. 31-32) count six of the Amended Complaint be granted as it relates to Individual Defendant Lundy.

The Court will now take up Plaintiff's sexual harassment claim against Mount Vernon, noting that Plaintiff has produced no documents providing evidence of a custom or policy that would allow an employee to have nonconsensual sex with an inmate. Furthermore, Key has failed to show that any custom or policy was established that would allow such behavior, failing to even demonstrate that any sort of sexual behavior has occurred previously between an employee and an inmate that would have put the Town on notice that such behavior was going on and needed to be curtailed.  Plaintiff has also failed to demonstrate any endorsement of Mott's behavior by Mount Vernon.  The Court finds that Key has not established any custom or policy by Defendant Mount Vernon that allows for the sexual assault of its inmates. Therefore, it is recommended that Defendant Mount Vernon's Motion to Dismiss (Docs. 29-30) count six of Plaintiff's Amended Complaint be granted.

In the seventh count of her Amended Complaint, Key claims that the Town of Mount Vernon violated her constitutional rights due to custom, policy or practice in having no gender

restrictions in the supervision of inmates (Doc. 26, ¶¶ 86-89).
More specifically, Plaintiff claims that this was done "pursuant
to the custom[,] policy and/or practice of Mount Vernon to not
require same gender supervision with inmates" (Doc. 26, ¶ 51).

The Court finds that Plaintiff has failed to demonstrate
that Mount Vernon knew of a substantial risk of serious harm to
her safety as a female being protected by male guards and was
deliberately indifferent to that risk as required in *Farmer*.
Key has not asserted facts that demonstrate that there had ever
been an incidence of a male guard sexually assaulting a female
inmate in Mount Vernon's jail prior to her own assault.
Furthermore, Plaintiff has not asserted facts that indicate that
Mount Vernon should have known that such an assault was likely.
Therefore, it is recommended that Defendant Mount Vernon's
Motion to Dismiss (Docs. 29-30) be granted as to count seven of
Plaintiff's Amended Complaint.

In her eighth claim, Plaintiff has asserts a violation of
her constitutional rights by Mount Vernon due to custom, policy,
or practice in the policy of violating citizens'/inmates'
constitutional rights (Doc. 26, ¶¶ 90-93).  More specifically,
Key has asserted that "Mott's actions were also done pursuant to
the policy, custom and practice of the Town of Mount Vernon to

violate the constitutional rights of those in custody generally, in addition to the other customs, policies and practices set forth herein *supra* and *infra* (Doc. 26, ¶ 61).

The Court finds that there is no claim raised in count eight that has not been previously raised by Key in her earlier claims.  The Court further finds that all previous constitutional claims brought by Plaintiff have been analyzed under the appropriate legal framework and have been found to lack sufficient factual content to state a claim.  Therefore, as with the other claims, it is recommended that Defendant Mount Vernon's Motion to Dismiss (Docs. 29-30) count eight of Plaintiff's Amended Complaint be granted.

Key has also raised claims against the Defendants based on State law pursuant to 28 U.S.C. § 1367 in this action.  The first State claim raised is that Key was forced to engage in nonconsensual intercourse with Mott, causing her physical and emotional injury (Doc. 26, ¶¶ 65-67).  She seeks judgment against all Defendants (*id.*).

Mount Vernon seeks dismissal of this claim, directing this Court's attention to statutory law that states the following:

> No city or town shall be liable for
> damages for injury done to or wrong suffered
> by any person or corporation, unless such

> injury or wrong was done or suffered through
> the neglect, carelessness, or unskillfulness
> of some agent, officer, or employee of the
> municipality engaged in work therefor and
> while acting in the line of his or her duty.

Ala. Code § 11-47-190.  The Alabama Supreme Court has held that
claims alleging intentional torts against municipalities are
barred under this statute.  *Walker v. City of Huntsville*, 62
So.3d 474, 501-02 (Ala. 2010) (claims against City of malicious
prosecution, tort of outrage, and invasion of privacy are
intentional torts, barred by § 11-47-190).  Judge Butler, in a
separate case before this Court, granted summary judgment on an
assault claim against the City of Mobile under this same
statute.  *See Beech v. City of Mobile*, 874 F.Supp. 1305, 1314
(S.D. Ala. 1994).

The Individual Defendants have pointed to another Alabama
Supreme Court decision which reiterated a previous decision that
"'it is difficult to impose liability on one person for an
intentional criminal act committed by a third person.'"  *Moye v.
A.G. Gaston Motels, Inc.*, 499 So.2d 1368, 1370 (Ala. 1986)
(*quoting CIE Service Corp. v. Smith*, 460 So.2d 1244, 1247 (Ala.
1984)).  The *Moye* Court went on to hold that "the general rule
in Alabama [is] that absent special relationships or
circumstances, a person has no duty to protect another from

29

criminal acts of a third person." *Moye*, 499 So.2d at 1370.

As noted by the Defendants (Doc. 37, pp. 2, 8; Doc. 38, p. 2), Key has not addressed the Defendants' defenses to her claim in her response to the Motions to Dismiss the Amended Complaint (*see* Doc. 34). Therefore, after consideration of the arguments and law cited herein, and Plaintiff's failure to respond, it is recommended that the two Motions to Dismiss Key's claim of assault against all of the Defendants, except Mott, be granted (Docs. 29-32).

Plaintiff next claims that all Defendants violated the custodial sexual misconduct statute (Doc. 26, ¶¶ 68-70). This statute, Ala. Code § 14-11-31,[7] is the one to which Mott pled guilty (*id.* at ¶ 59). In her response to the two Motions to

---

[7]"(a) It shall be unlawful for any employee to engage in sexual conduct with a person who is in the custody of the Department of Corrections, the Department of Youth Services, a sheriff, a county, or a municipality.

(b) It shall be unlawful for any probation or parole officer to engage in sexual conduct with a person who is under the supervisory, disciplinary, or custodial authority of the officer engaging in the sexual conduct with the person.

(c) Any person violating subsection (a) or (b) shall, upon conviction, be guilty of custodial sexual misconduct.

(d) Custodial sexual misconduct is a Class C felony.

(e) For purposes of this article, the consent of the person in custody of the Department of Corrections, the Department of Youth Services, a sheriff, a county, or a municipality, or a person who is on probation or on parole, shall not be a defense to a prosecution under this article." Ala. Code § 14-11-31.

Dismiss, Key has asserted that "the violation of the statute is alleged to have been committed pursuant to the Defendants' policies" (Doc. 34, p. 15).  Plaintiff goes on to argue that "there is a real issue as to whether [the Defendants] either a) ratified or b) aided and abetted Mott in the rape of Key, and so are considered as 'standing in Mott's shoes' so to speak for liability purposes" (Doc. 34, pp. 15-16).

The Town has argued that, with this claim, Key has merely recast her assault claim in new garb and that she cannot escape Ala. Code § 11-47-190's requirement of "neglect, carelessness, or unskillfulness" (Doc. 30, p. 3; Doc. 37, p. 8).  Mount Vernon further points to Alabama case law stating that "[i]t is well settled that the violation of a statute or an ordinance may constitute negligence." *Jones v. Kappa Alpha Order, Inc.*, 730 So.2d 197, 200 (Ala. Civ. App. 1997), *reversed, on other grounds, sub nom. Ex parte Barran*, 730 So.2d 203 (Ala. 1998) (*citing Keeton v. Fayette County*, 558 So.2d 884, 887 (Ala. 1989)).[8]  The *Jones* Court went on to fashion analysis for exploring such a statutory violation.

---

[8]The Court notes that the Individual Defendants have adopted the Town's arguments regarding this claim (Doc. 32, p. 5).

The Court notes that both sides point to *Jones* as the case directing this Court's decision with regard to this claim, so the Court will discuss it.  The Plaintiff in that case, a fraternity pledge at Auburn University, sued the national fraternal organization and the local chapter of Kappa Alpha, as well as some of the individual members, raising numerous state claims for injuries suffered during an academic school year of hazing.  *Jones*, 730 So.2d at 199.  The Alabama Court of Criminal Appeals set out the following facts, "viewed in a light most favorable to Jones:"

> [T]he KAs subjected him to numerous inappropriate hazing activities, which included the following: (1) the KAs made Jones dig a rather large ditch, which they filled with water, feces, urine, dinner leftovers, and vomit; (2) they forced Jones to get into the ditch on numerous occasions in the winter months and directed other pledges to dunk Jones in the ditch; (3) they forced Jones to eat "yerks" (a mixture of hot sauce, mayonnaise, butter, beans, etc.); (4) they told Jones that if anyone "puked" in the yerks, he would have to eat the yerks; (5) they subjected Jones to paddlings, which caused his buttocks to become swollen and to turn black and blue; (6) they forced Jones to get into a garbage can filled with urine, ice, and water; (7) they threw urine and feces on Jones; (8) they deprived Jones of sleep by forcing him to show up at the KA fraternity house at two o'clock in the morning; (9) on one occasion, at two o'clock in the morning, one of the

> individual KA members, who was intoxicated,
> began firing a pistol into the air; (10)
> they threw deer guts and blood on Jones; and
> (11) they pushed and kicked Jones down
> stairs during a ceremony referred to as the
> "gauntlet," causing him to suffer a broken
> right hand.  We also note that another
> individual KA member initiated a fight with
> Jones, causing Jones to suffer a broken left
> hand.  Jones was finally suspended from
> school as a result of failing grades.

*Jones*, 730 So.2d at 199.  In parsing through the facts in an

effort to determine if the trial court had properly granted

summary judgment on the negligence claims against all of the

Defendants, the *Jones* Court stated the following:

> In order to state a cause of action for
> statutory negligence, Jones must show the
> following: (1) that the statute was enacted
> to protect a class of persons to which Jones
> belonged; (2) that Jones's injury was the
> kind of injury contemplated by the statute;
> (3) that the individual KA members violated
> the statute; and (4) that the individual KA
> members' violation of the statute
> proximately caused Jones's injury.

*Jones*, 730 So.2d at 200 (*citing Fox v. Bartholf*, 374 So.2d 294

(Ala. 1979)).

In arguing that Key cannot meet the requirements of Jones,

the Town concedes that Plaintiff can demonstrate the first two

prongs of *Jones*, but argues that she has not—and cannot—allege

sufficient facts to establish the latter two requirements (Doc. 30, pp. 3-4).

The Court agrees with the Defendants' arguments, finding that Key has not—whether she could have or not—asserted facts sufficient to establish that either the Town or the Individual Defendants violated the statute or that the Defendant's violation of the statute proximately caused Key's injury. Though Plaintiff has argued that the Town's policies—or failure thereof—has led to her injuries, the Court finds that the facts asserted do not support those arguments.  It is recommended that the two Motions to Dismiss (Docs. 29-32) be granted as to Plaintiff's claim under Ala. Code § 14-11-31.

Additionally, the Court notes its concern that the *Jones* Court found that the plaintiff had "stated a cause of action based on the doctrine of negligence per se, based upon a violation of § 16-1-23, Ala.Code 1975."[9]  *Jones*, 730 So.2d at 200.  This was done in spite of its acknowledgment "that neither [it] nor the Alabama Supreme Court [had] previously recognized a cause of action for hazing." *Jones*, 730 So.2d at 199.[10]  This

---

[9]This statute defines and prohibits hazing, classifying it as a Class C misdemeanor.
[10]The Court notes, though, that the Alabama Supreme Court did not
(Continued)

34

Court's concern arises from the Parties' implicit agreement herein that this Court should find that Ala. Code § 14-11-31 creates a cause of action, even if they do not agree on whether the requirements for such cause of action have been met.   The Court declines the invitation, leaving such opportunity for the State legislature, or even the State courts, to fashion its own law.

The Court notes that, in their Motions to Dismiss, the Individual Defendants have argued that they are each entitled to qualified immunity in all of the claims brought against them in their individual capacity (Doc. 32, pp. 2-3, 16-23; Doc. 38, pp. 3-15).   Because the Court has, throughout this Report, found that Plaintiff has not successfully stated a claim against the Individual Defendants in their individual capacities, it is unnecessary to engage in a discussion of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

_____

find that the Alabama Court of Criminal Appeals had erred in fashioning a new cause of action, though it did reverse some of the findings made by the lower court.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

In its Motion to Dismiss (Doc. 30, p. 27), Mount Vernon argues that it is immune from Plaintiff's demand for punitive damages. Defendant correctly cites *Healy v. Town of Pembroke Park*, 831 F.2d 989, 991 (11th Cir. 1987) and *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) for the rule of law that punitive damages are not allowable against a municipality in a § 1983 action. Therefore, it is recommended that Defendant Mount Vernon's Motion to Dismiss be granted as to Plaintiff's claim for punitive damages against Mount Vernon.

In summary, after review of all of the relevant pleadings and briefs, it is recommended that Defendant Mount Vernon's Motion to Dismiss (Docs. 29-30) be granted, in its entirety, as to all claims against it in Plaintiff's Amended Complaint. It is further recommended that the Motion to Dismiss filed by the Individual Defendants (Doc. 31-32) be granted, in its entirety, as to all claims against them in Plaintiff's Amended Complaint. With these recommendations, it necessarily follows that the following Defendants be dismissed from this action: Town of Mount Vernon, Mount Vernon Mayor Jerry C. Lundy, Mount Vernon

36

Chief of Police Steve A. Reed, Mount Vernon Acting Chief of
Police Joe Cassidy, Mount Vernon Director of Public Safety Jerry
K. Taylor, and Mount Vernon Council Members Johnnie Robinson,
Cecil Earl Driskell, Robert Taylor, Jr., Jeffery Bolden, Jr. and
Verdell Trotter-Dees.  It is suggested that the only remaining
Defendant in this action is James Mott.  It is further
recommended that the punitive damages claim brought against the
Town of Mount Vernon be dismissed.

                MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
                 AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
                   AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or
anything in it must, within fourteen days of the date of service
of this document, file specific written objections with the
clerk of court.  Failure to do so will bar a *de novo*
determination by the district judge of anything in the
recommendation and will bar an attack, on appeal, of the factual
findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C);
*Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v.
Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The
procedure for challenging the findings and recommendations of
the magistrate judge is set out in more detail in SD ALA LR 72.4
(June 1, 1997), which provides that:

     A party may object to a recommendation entered by a
     magistrate judge in a dispositive matter, that is, a matter
     excepted by 28 U.S.C. § 636(b)(1)(A), by filing a
     "Statement of Objection to Magistrate Judge's
     Recommendation" within fourteen days after being served
     with a copy of the recommendation, unless a different time
     is established by order.  The statement of objection shall
     specify those portions of the recommendation to which
     objection is made and the basis for the objection.  The
     objection party shall submit to the district judge, at the

time of filing the objection, a brief setting forth the
party's arguments that the magistrate judge's
recommendation should be reviewed *de novo* and a different
disposition made.  It is insufficient to submit only a copy
of the original brief submitted to the magistrate judge,
although a copy of the original brief may be submitted or
referred to and incorporated into the brief in support of
the objection.  Failure to submit a brief in support of the
objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment
can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate finds that the tapes and original records in this
action are adequate for purposes of review.  Any party planning
to object to this recommendation, but unable to pay the fee for
a transcript, is advised that a judicial determination that
transcription is necessary is required before the United States
will pay the cost of the transcript.

Done this 4th day of April, 2013.

s/BERT. W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE